# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**RUTH E. GOMEZ,**

**Plaintiff,**

-vs-                                                    **Case No.  6:04-cv-1690-Orl-JGG**

**COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,**

**Defendant.**

_____

## MEMORANDUM OF DECISION

Plaintiff Ruth E. Gomez Diaz ["Gomez"] appeals to the district court from a final decision of

the Commissioner of Social Security [the "Commissioner"] denying Gomez's application for a period

of disability and disability insurance benefits. *See* Docket No. 1 (complaint).  For the reasons set forth

below, the case is **REMANDED** to the Commissioner for further proceedings.

## I.     PROCEDURAL HISTORY

On August 15, 2001, Gomez filed an application for a period of disability and disability

insurance benefits.  The Social Security Administration ("SSA") denied her application at the initial

and reconsideration levels, and Gomez timely requested a hearing.

The Honorable Philemina M. Jones, Administrative Law Judge ("ALJ"), held a hearing on

September 4, 2003.  R. 367 - 400.  Juliana Hey, a Vocational Expert ("VE") also testified at the

hearing.  On September 24, 2003, the ALJ issued an unfavorable decision.  R. 22 - 34.  The ALJ

concluded that, based on the VE's testimony, Gomez could perform other work in the national economy and therefore was not disabled.[1]  R. 34, Findings 13 - 14.

Gomez requested review of the ALJ's decision on October 28, 2003.  R. 18 -21.  On July 21, 2004, the Appeals Council denied Gomez's request for review.  R. 11-15.  The Appeals Council subsequently received additional evidence, which it accepted.  R. 10.  On September 22, 2004, after considering the additional information, the Appeals Council again concluded that there was no basis to overturn the ALJ's decision, and denied Gomez's request for review.  R. 6 - 9.  On November 22, 2004, Gomez timely appealed the final decision to the United States District Court.  Docket No. 1 at 1.  On July 29, 2005, Gomez filed in this Court a memorandum of law in support of her appeal.  Docket No. 19.  On September 27, 2005, the Commissioner filed a memorandum in support of her decision that Gomez was not disabled.  Docket No. 20.  The appeal is ripe for determination.

## II.    THE PARTIES' POSITIONS

Gomez assigns two errors to the Commissioner.  First, Gomez claims that the Commissioner erred in rejecting the opinions of Gomez's treating and evaluating physicians Dr. Burke Jackson, Dr. Jose Thomas-Richards, and Dr. George Ibrahim.  Although Dr. Jackson expressed opinions regarding both Gomez's physical and mental condition, Gomez only challenges the failure to give controlling weight to Dr. Jackson's opinion regarding her physical condition.  Docket No. 19 at 5.  Second, Gomez claims that the Commissioner erred in disregarding Gomez's subjective complaints

---

[1]The Social Security ALJs face a herculean task.  The Commissioner now expects ALJs to hear and decide 50 to 55 decisions per month according to a former Chief ALJ in a July 2005 presentation at a Federal Judicial Center workshop on disability appeals.  With only the help of non-attorney decision-writers and staff attorneys, the ALJs must rapidly process a monumental backlog of thousands of complex, aging cases.  The effects are felt in the district court. According to the AOUSC, the Middle District of Florida has the third highest volume of disability appeals in the nation.  Each magistrate judge in the Orlando Division, for example, resolves approximately fifty-three appeals every year  —  an average of about one per week.

of pain.  Although Gomez claimed both physical and mental disability at the hearing stage, the Court interprets this appeal as challenging only the conclusion that Gomez is not disabled within the meaning of the Social Security Act because of her physical condition and resulting pain.

The Commissioner argues that substantial evidence supports her decision to deny disability. First, the Commissioner argues that the ALJ's findings were supported by substantial evidence. Docket No. 20.  Second, the Commissioner argues that the ALJ's rejection of Gomez's subjective complaints were supported by substantial evidence.

### III.   THE STANDARD OF REVIEW

#### A.   AFFIRMANCE

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable

as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

**B.     REVERSAL**

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause.  42 U.S.C. § 405(g)(Sentence Four).  The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord, Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt.  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636 - 37 (11th Cir. 1984).  A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

## C.    REMAND

The district court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996).  To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); *accord, Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30  (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (ALJ should consider on remand the need for orthopedic evaluation).  After a

sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).

To remand under sentence six, the claimant must establish:  1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level. *See Jackson*, 99 F.3d at 1090 - 92; *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *see also, Keeton v. Dept. of Health and Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).

A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. *Jackson*, 99 F.3d at 1095.  With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. *Jackson*, 99 F.3d at 1095.  The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.[2] *Id.*

---

[2]The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. *Jackson*, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. *Id.* In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. *Id.*

IV.    **THE LAW**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505 - 404.1511.

A.    **DEVELOPING THE RECORD**

The ALJ has a duty to fully and fairly develop the record.  *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988); *Cowart v. Schweiker*, 662 F.2d 731, 735 - 36 (11th Cir. 1981).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right.  *See* 42 U.S.C.§ 406; *Cowart*, 662 F.2d at 734.  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  *See Cowart*, 662 F.2d at 735 - 36.

Where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  *See Brown v. Shalala*, 44 F.3d 931, 934 - 35 (11th Cir. 1995), *citing Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982).  This special duty requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" and to be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Cowart*, 662 F.2d at 735 (citations omitted).

### B.    THE FIVE STEP EVALUATION

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, he is not disabled.  20 C.F.R. § 404.1520 (b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520 (c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.  20 C.F.R. § 404.1520 (d).  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.  20 C.F.R. § 404.1520 (e).  Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then claimant is disabled.  20 C.F.R. § 404.1520 (f).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423 (d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses.  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).  Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *See Jamison v. Bowen*, 814 F.2d 585, 588 - 89 (11th Cir. 1987);

-8-

*Davis*, 985 F.2d at 534.  A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly.  *Vega v. Commissioner*, 265 F.2d 1214, 1219 (11th Cir. 2001).

The claimant has the burden of proving the existence of a disability as defined by the Social Security Act.  *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  In this step, the ALJ assesses the claimant's residual functional capacity ["RFC"].  This assessment measures whether a claimant can perform past relevant work despite his or her impairment.  20 C.F.C. § 404.1520 (f); *see also, Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull.  *See* 20 C.F.C. § 404.1545(b).

The ALJ first considers whether the claimant has the RFC to perform the functional demands and duties of a past job as actually performed by the claimant.  *See* SSR 82-61.  If so, the claimant is not disabled.  If not, the ALJ then considers whether the claimant can perform the functional demands of the job as it is generally performed in the national economy.  SSR  82-61.  In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy.  20 C.F.C. § 404.1567.

The claimant must prove disability on or before the last day of his or her insured status for the purposes of disability benefits.  *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979); 42 U.S.C. §§ 416 (i)(3); 423(a), (c).  If a claimant

becomes disabled after losing insured status, the claim for disability benefits must be denied despite the claimant's disability. *See, e.g., Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973); *Chance v. Califano*, 574 F.2d 274 (5th Cir. 1978).

### C.    OTHER WORK

Once the ALJ finds that a claimant cannot return to his or her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Foote*, 67 F.3d at 1558; *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"]. *Foote,* 67 F.3d at 1558.

Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00 (e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements). Exclusive reliance is not appropriate, however, "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walker v. Bowen*, 826 F.2d 996, 1002-03 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. *Foote*, 67 F.3d at 1559; *Chester v. Bowen*, 792 F.2d 129, 132 (11th Cir. 1986); *see*

*also, MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986) (when non-exertional limitations are alleged, the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert).

It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. *See Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989); *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559.

### D.    TREATING PHYSICIANS

Absent the existence of "good cause" to the contrary, the ALJ must give substantial weight to the opinion, diagnosis and medical evidence of a treating physician. *See MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Lewis v. Callahan*, 125 F.3d 1436, 1439 - 1441 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *Sabo v. Commissioner of Social Security*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527 (d)(2).

The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d

580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).  Similarly, the ALJ may reject any medical opinion if the evidence supports a contrary finding.  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also, Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1.) length of the treatment relationship and the frequency of examination; 2.) the nature and extent of the treatment relationship; 3.) the medical evidence supporting the opinion; 4.) consistency with the record a whole; 5.) specialization in the medical issues at issue; 6.) other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527 (d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir.1984); *see also,* 20 C.F.R. § 404.1527 (d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527 (e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or

the application of vocational factors because those ultimate determinations are for the Commissioner.
20 C.F.R. § 404.1527 (e).

The ALJ must, however, state with particularity the weight given different medical opinions and the reasons therefore, and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). Without the ALJ making the necessary findings, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence. *Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).

### E.    PAIN

Pain is a non-exertional impairment. *Foote*, 67 F.3d at 1559; *Walker*, 826 F.2d at 1003. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (*e.g.*, medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1529. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote,* 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*,

-13-

957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

F.      CREDIBILITY

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Foote,* 67 F.3d at 1561-62*; Jones v. Dep't of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *See Hale v. Bowman,* 831 F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).  As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  *Foote,* 67 F.3d at 1561-62*; Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  *See Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d at 1562 (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

### G.    MEDICAL TESTS AND EXAMINATIONS

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; *see also, Conley v. Bowmen*, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (failure to order such an evaluation may be reversible error).  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  20 C.F.R. § 416.917 (1998).

## V.    APPLICATION AND ANALYSIS

### A.    THE FACTS

Plaintiff, born September 7, 1963, was 40 years old at the time of the ALJ's decision.  R. 54, 372.  Plaintiff completed four years of college, but did not complete all of the requirements to be awarded a degree.  R. 374.  She had past relevant work experience as a bank collections agent, office clerk, salad preparer, cashier, housekeeper, and teacher's aide.  R. 26, 68, 76.  Gomez is unable to perform any of her past relevant work.  R. 33, Finding 8.   She has not engaged in substantial gainful activity since the alleged onset date of her disability.[3]  R. 26.

---

[3] Plaintiff applied for a period of disability and DIB solely under Title II of the Act.  To be eligible for DIB under Title II of the Act, a claimant must have disability insured status in the calendar quarter in which she became disabled, or in a later quarter in which she was disabled.  See 42 U.S.C. § 423(a) (c); 20 C.F.R. §§ 404.101, 404.130, 404.131(a), 404.315(a), 404.320(b); *Dawkins v. Bowen*, 848 F.2d 1211, 1215 (11th Cir. 1988).  Plaintiff was required to establish that she became unable to work prior to December 31, 2002, when her insured status expired.  R. 26, 59; see also Plaintiff's brief, Docket No. 19 at 4 n.2.

Gomez saw Burke Jackson, M.D. for treatment between October 19, 1998 and May 15, 2002. R. 206 - 279.  Gomez was diagnosed initially as having post-concussion syndrome and low back pain, which resulted in unspecified temporary restrictions on walking, standing, sitting, stooping/kneeling, reaching, climbing, and lifting (10 pounds).  R. 278-79.   These restriction were expected to last six weeks.  R. 279.

Gomez returned to Dr. Jackson on January 8, 1999.  R. 276 -77.  She was diagnosed with back pain secondary to a motor vehicle accident, and restricted from working for an anticipated six to eight months.  *Id*.  On May 7, 1999, Dr. Jackson stated Gomez could neither work nor attend school due to fibromyalgia, back pain, and migraine headaches.  R. 272-273.   Less than three weeks later, Dr. Jackson stated Plaintiff could work part-time (25 hours per week), with restrictions on walking, standing, sitting, stooping/kneeling, climbing, and lifting (10 pounds).  R. 270-71.

On July 19, 1999, Dr. Jackson again restricted Plaintiff from all work, but stated that she could attend school for less than 10 hours per week.  R. 267.  Dr. Jackson's diagnosis was back pain due to sprain or strain and fibromyalgia.  R. 267.  Dr. Jackson temporarily restricted Plaintiff to walking 15-30 minutes, sitting for 30-45 minutes, and reaching 15-20 minutes.  He permanently restricted her from standing, stooping/kneeling, climbing, and lifting (10-15 pounds).

Approximately two months later, on September 29, 1999, Dr. Jackson restricted Plaintiff from all work and school due to severe back pain.  R. 260-61.  Dr. Jackson stated Plaintiff was permanently restricted from walking, standing, sitting, vision-hearing, reaching, climbing, and lifting.  R. 261.

-16-

On December 21, 1999, Dr. Jackson completed a medical verification form in which he diagnosed Plaintiff as having chronic back pain and migraines. R. 259. He expressed a conclusory opinion that Gomez was 100% permanently disabled. *Id.*

At an examination on February 21, 2000, Dr. Jackson noted Plaintiff's subjective complaints of intermittent back pain, primarily in the lower, left lumbar spine and radiating to the anterior thighs. R. 257. Gomez reported that pain was precipitated by lifting at work, and that she has some pain relief with muscle relaxants. *Id.* Objectively, Dr. Jackson observed no evidence of acute injury, but palpation produced pain over the left and right lumbar paraspinal muscles. *Id.* He further observed limited range of motion with flexion. *Id.* Dr. Jackson prescribed weight loss and improvement in sleep. *Id.*

On March 20, 2000, Dr. Jackson again examined Plaintiff. Plaintiff reported constant back pain primarily in her lower left lumbar region that was moderate in intensity, severe, throbbing and aching. R. 255. Objectively, Dr. Jackson observed no evidence of acute injury, but palpation revealed muscle tenderness and muscle spasm. *Id.*

On July 5, 2000, Gomez had an MRI of the lumbar spine. R. 248-49. Radiologist Gertrude C. Birkhahn, M.D., found no significant acquired spinal stenosis at the multiple levels obtained. *Id.* There also was posterior central disc bulge at L5-S1. *Id.* Dr. Birkhahn noted an unusual bulky appearance with high signal on T1 weighted images at the inferior end plate of L5, and recommended additional studies. *Id.*

On July 20, 2000, Gomez reported to Dr. Jackson that she was experiencing moderate neck pain with no radiation. R. 245. Associated symptoms include upper extremity paresthesia, but not

crepitus or headache.  *Id*.  Physical examination revealed range of motion in the neck was decreased with side flexion to the left and right.  *Id.*  Gomez appeared in no apparent distress.  *Id.*

On July 23, 2000, Dr. Jackson completed a medical verification form in which he diagnosed Plaintiff as having chronic low back pain and migraines.  R. 250.  He stated a conclusory opinion that Gomez was 100% permanently disabled.  *Id*.

On July 31, 2000, Gomez had an MRI of the cervical area and a bone scan.  R. 243-44.  The MRI revealed no evidence of disc herniation, the alignment of the vertical bodies was well preserved, and all was within normal ranges.  R. 244.  The bone scan was negative, and films from the skull to the toes showed normal activity.  R. 243.

On August 9, 2000, Gomez underwent a series of tests.  R. 236-42.  A CT scan of the brain was negative.  R. 236.  A complete cervical spine series showed satisfactory alignment, no definite fracture or displacement, but poor visualization of C7.  R. 237.  A chest view revealed low lung volumes, but otherwise negative.  R. 238.  A complete lumbar spine series was negative, showing satisfactory alignment and no evidence of fracture.  R. 239.  X-rays of the right foot revealed mild calcaneal spurring, but otherwise was negative.  R. 240.  Views of both the right and left tibia and fibula were negative.  R. 241-42.

Dr. Jackson's notes of his physical examination of Gomez on August 16, 2000, was unremarkable, although his assessment included back pain and muscle pain.  R. 234.  When Dr. Jackson examined Gomez on October 18, 2000, he noted decreased range of motion in the neck forward flexion and shoulders.  R. 227.  His assessments included acute suppurative labyrinthitis and

-18-

back pain.  *Id.*   On November 9, 2000, however, Gomez was noted as having full range of motion in the neck.  R. 224.

On October 24, 2001, Dr. Thomas-Richards, an orthopedic surgeon, prepared a report for a disability determination.  R. 143-46.  He conducted a physical examination of Gomez and determined that Gomez was suffering from a low back pain syndrome due to myofasciitis exacerbated by morbid exogenous obesity.  R. 145.  He stated that in an eight hour work day, Gomez could sit for 6-7 hours and stand for 3-4 hours, walk for 2-3 hours, but that she had to change positions every 10-15 minutes.  R. 145. Dr. Thomas-Richards further stated that Gomez could not walk for more than 5-10 minutes without stopping to rest. *Id.*  He diagnosed her as having bilateral carpal tunnel syndrome, restricted her from performing a job requiring fine manipulation and dexterity, and stated she could not lift, carry, push, or pull objects in excess of 25-30 pounds.  R. 146.  Dr. Thomas-Richards observed, however, that although Plaintiff's behavior pattern was consistent with someone with severe low back pain, her responses were "rather dramatic" relative to her low back symptomatology.  R. 145.

On November 15, 2001, Dr. Goss (a general practitioner) prepared a physical residual functional capacity assessment.  R. 161-68.  Dr. Goss's primary diagnosis was fibromyalgia with a secondary diagnosis of CTS.  Dr. Goss gave exertional limitations as follows: occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; push/pull limited in upper extremities.  R. 162.  He further noted postural limitations of "occasionally" for climbing (ramp/stairs), stooping, crouching, and crawling.  R. 163.  Postural limitations of "frequently" were noted for balancing and kneeling.  *Id.*  He concluded by opining that Gomez was capable of "restricted light work."  R. 166.  Dr. Goss noted his conclusion

was significantly the same as Dr. Richard's finding that Gomez had "restricted light capability." *Id*.

An MRI of the SI joints taken on January 2, 2002, revealed mild degenerative changes of the sacroiliac joints, which was symmetric. R. 215. An MRI of the lumbar spine taken on February 22, 2002, revealed degenerative disc disease changes at L5-S1 without evidence of disc herniation or spinal stenosis. R. 211-12. An MRI of the cervical spine taken on February 22, 2002, revealed mild spondylitic changes at C5-C6 and to a lesser extent c6-C7 and C4-C5 without evidence of disc herniation or spinal stenosis; the MRI was otherwise unremarkable. R. 210.

Dr. Jackson's notes of his physical examination of Gomez on February 14, 2002, noted decreased range of motion in neck extension and lateral flexion; back flexion and extension. R. 208. Otherwise, Gomez's condition was unremarkable. R. 208. Gomez's examination on April 1, 2002, and May 15, 2002, did not note any objectively remarkable findings. R. 206-207.

Dr. Cristina B. Rodriguez, M.D., a pediatrician, prepared a Physical Residual Functional Capacity Assessment on February 20, 2002. R. 184-191. Dr. Rodriguez's primary diagnosis was fibromyalgia with a secondary diagnosis of CTS. R. 184. Dr. Rodriguez gave exertional limitations as follows: occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand or walk 2-4 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; push/pull unlimited, except as shown for lift/carry. R. 185. She further noted postural limitations of "occasionally" in all categories. R. 186.

Gomez began treating with Dr. Ibrahim on April 19, 2002. R. 304-305. Examination of the cervical spine revealed moderate tenderness along the curvature of the cervical spine with tenderness on both paravertebral muscles. R. 305. Gomez also exhibited mild to moderate tenderness in the mid

thoracic area. *Id*. Cervical motion was full range, but lumbar spinal motion was limited due to pain on flexion, extension and lateral rotation. *Id*. Gomez had paravertebral muscle spasms on the left side. *Id*. Self-leg raising on both lower extremities is 90 on right side and 75 on left side. *Id*. There was some swelling and tenderness in the left knee. *Id*. McMurray's Test was positive. *Id*. There was soft tissue tenderness in the upper and lower extremities' musculature with trigger areas. *Id*. Dr. Ibrahim found that Gomez fulfills the diagnostic criteria for Atypical Connective Tissue Disease. R. 304. He also found evidence of Myalgia, Arthralgia, Chronic Fatigue greater than six months, sleep disturbances, colitis, and burning sensation in feet and legs. *Id*. He assessed Gomez as having osteoarthritis left knee and tear medial meniscus, cervical spondylosis, and lumbar spondylosis. *Id*.

When Dr. Ibrahim examined Gomez on December 16, 2002, he noted that cervical motion appeared limited due to pain, and moderate tenderness over C5-C6. R. 302. He also noted diffused tenderness along the thoracic and lumbar spines. *Id*. There was soft tissue tenderness present on both upper extremities and shoulders, and positive trigger points over the trapizius. *Id*. The proximal legs were sensitive. *Id*. Neurological examination revealed cranial nerves at second to twelve were normal. R. 301. Deep tender reflexes are 1+ in the upper extremities and 2+ in the lower extremities. *Id*. Some loss of sensation was noted the the right thumb, index finger, and middle finger. *Id*. Some loss of sensation to pinprick on both feet and lower third of her legs. *Id*. Dr. Ibrahim added a diagnosis of fibromyalgia. *Id*.

On December 30, 2002, Dr. Ibrahim noted that Gomez exhibited moderate tenderness over C5, C6, and C7, mid cervical area and lumbar area. R. 300. He suspected Gomez has a goiter and recommended an ultrasound of her thyroid. *Id*.

-21-

**B.     THE ANALYSIS**

Gomez assigns two errors to the Commissioner.  First, Gomez claims that the Commissioner erred in rejecting the opinions of Gomez's treating and evaluating physicians Dr. Burke Jackson, Dr. Jose Thomas-Richards, and Dr. George Ibrahim.  Second, Gomez claims that the Commissioner erred in disregarding Gomez's subjective complaints of pain.

The ALJ's decision rejects Dr. Jackson's opinion regarding Plaintiff's mental condition because Dr. Jackson is not a psychiatrist.  R. 29.  The ALJ, however, does not state what weight was given to Dr. Jackson's assessment of Plaintiff's physical condition.  Nor does the ALJ state what weight was given to the opinion of Plaintiff's other treating physician, Dr. Ibrahim.  In assessing Plaintiff's residual functional capacity, the ALJ relied on the assessments performed by medical reviewers Dr. Goss and Dr. Rodriguez, except that the ALJ disagreed with the opinion that Plaintiff was limited to walking/standing no more than two hours in an 8-hour workday.  R. 30-31.  The ALJ gave little weight to Dr. Thomas-Richards' opinion as the doctor found no medical basis that Plaintiff would need sedentary work in which she could change positions as needed.  R. 31.

The law requires the ALJ to state with particularity the weight given different medical opinions and the reasons therefore; failure to do so is reversible error.  *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).  Without the ALJ making the necessary findings, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence.  *Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).  The law does not permit the district court to supply its own reasons supporting the ALJ's decision.  The ALJ's failure to state what weight was accorded to Dr. Jackson's opinion regarding Plaintiff's physical condition and the failure to state what weight was

-22-

given to Dr. Ibrahim's opinion therefore require the Court to remand this action pursuant to 42 U.S.C. § 405(g)(Sentence Four) to allow the Commissioner to explain the basis for her decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30  (11th Cir. 1984).  Without an assessment of the weight to be accorded to Dr. Jackson's and Dr. Ibrahim's opinions, the Court also is unable to analyze Plaintiff's complaints of pain.

## VI.      CONCLUSION

For the reasons stated above, the case is **REMANDED** to the Commissioner pursuant to Sentence Four to allow the Commissioner to explain the basis for her decision, and to hold such further proceedings as she may be advised.  The Clerk shall enter judgment in favor of Plaintiff.

**DONE** and **ORDERED** in Orlando, Florida on January 23, 2006.

JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE

Copies to:

Mary Ann Sloan, Chief Counsel
Dennis R. Williams, Deputy Chief Counsel
Paul Jones, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

Susan Roark Waldron
Assistant United States Attorney
400 N. Tampa St., Suite 3200
Tampa, FL                33602

-23-

The Honorable Philemina M. Jones
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
Suite 300, Glenridge Building
3505 Lake Lynda Drive
Orlando, FL            32817